TALKIN, MUCCIGROSSO & ROBERTS, L.L.P.

ATTORNEYS AT LAW
40 EXCHANGE PLACE
18TH FLOOR
NEW YORK, NEW YORK 10005

(212) 482-0007 PHONE
(212) 482-1303 FAX
WWW.TALKINLAW.COM
EMAIL: INFO@TALKINLAW.COM

MARYLAND OFFICE:
5100 DORSEY HALL DRIVE
SUITE 100
ELLICOTT CITY, MD 21042
410-964-0300

April 6, 2015

NEW JERSEY OFFICE:
79 MAIN STREET
SUITE ONE
HACKENSACK, NJ 07601
201-342-6665

Honorable Frederic Block
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

**VIA ECF**

Re:   United States v. Lasha Goletiani
       11 Cr. 591 (FB)

Dear Judge Block:

Defendant Lasha Goletiani ("Goletiani") respectfully submits this letter as a Sentencing Memorandum for the Court's consideration in determining his appropriate and reasonable sentence.   By this letter, defendant also respectfully informs the Court of his objections to the United States Sentencing Guidelines (hereinafter referred to as the "Guidelines") calculation set forth in the Presentence Investigation Report (hereinafter referred to as the "PSR").   For all of the reasons set forth in detail below, defendant respectfully submits that a sentence below the applicable Guidelines range, is sufficient, but not greater than necessary, to satisfy the sentencing goals set forth in 18 U.S.C. § 3553(a).

## PERSONAL BACKGROUND

The instant case represents Lasha Goletiani's only contact with any criminal justice system.   A gifted soccer player, Goletiani escaped a part of the world that was in constant turmoil and ravaged by ethnic and political war and strife by immigrating to the United States in pursuit of his dream of playing professional soccer.   Apart from his involvement in the instant case, Lasha Goletiani's personal history is one of strong work ethic and dedication to family.   He worked hard

and sought opportunity and a better life for himself and his family in the United States. The instant offense conduct was defendant's misguided attempt to makes ends meet. He acknowledges that he uncharacteristically took a shortcut to earn money and accepts full responsibility for his actions. He blames nobody but himself. However, the ramifications of this poor judgement are not lost on Goletiani. He has learned. As defendant states in his letter to the Court[1], "The last couple years have been a noteworthy journey for me and my family." This "journey" has included nearly six months of incarceration in federal prison and separation from his wife and newborn daughter. The many months of forced reflection have resulted in Goletiani's clear understanding of right and wrong and that right is his only path. He owes that to himself, his community and his family. Goletiani informs the Court, "… I regret terribly that my actions have caused such trauma to my family. My darkest moments was when I was incarcerated for my crime. Every moment I have spent in prison was unending torment for me and my family." The retributive and rehabilitative processes upon defendant are already complete.

Goletiani was born on September 21, 1979 in Tbilisi, Georgia to Roland and Darejani Goletiani. PSR at ¶64. While the conditions in the family home were comfortable and nurturing during his childhood, the country was at war or embroiled in violence during much of the time he lived there. His father is a retired engineer and his mother has been a homemaker for her entire adult life; they both still live in Tbilisi. PSR at ¶64. Defendant was raised with his two brothers, Irakli, age 30, and Paata, who died in 1992 as a result of wounds suffered in combat at age 17. Irakli resides in Georgia and is a local soccer coach. PSR at ¶65. After the tragic loss of his brother, his parents suffered terribly. PSR at ¶66. His father battled alcoholism, which made life more difficult for Goletiani's family, but eventually his father recovered. Georgia suffered economically as the war with Russia was waged and defendant's family was not exempt from these difficulties. In his letter to the Court defendant writes that things were very difficult following the collapse of the Soviet Union. Although his local area was "crime infested," he "steered away from criminal lifestyle and pursued my dream to be a soccer player." However, he acknowledges "the unending unlawful activities psychologically affected me as I was growing up." Eventually he decided to leave the country to pursue his goals.

Goletiani immigrated to the New York City area in 2003 at age 24. PSR at ¶66. He arrived in New Jersey on a tourist visa with the hopes of becoming a professional soccer player. PSR at ¶66. As he writes in his letter, "My coming to the United States changed my life completely. I have made a new family and friends in a nation that I now call home." After moving to Brooklyn, he married Angelina Carrasquillo in 2005. PSR at ¶67. They divorced in 2010. PSR at ¶67. Defendant is now in a relationship with Lia Shavliashvili (age 29) with whom he has one daughter.

Goletiani (age 3). PSR at ¶68. Defendant supported Ms. Shavliashvili as she completed a course of study at ASA Technical School in June 2014. Ms. Shavliashvili is currently seeking employment through the school's placement program. PSR at ¶68. She describes Goletiani as a nice, quiet person, who is a very good father to their daughter. PSR at ¶69. She is naturally concerned about the immigration consequences faced by the defendant as a result of this case. PSR at ¶69. In her letter to the Court, she describes Goletiani as an "inspirational figure" whose support

---

1 Defendant's letter to the Court is attached hereto as Exhibit A.

allowed her to finish a degree while raising a young child, something she did not believe was possible.2

Goletiani graduated from the local high school in Georgia in 1996. PSR at ¶77. He attended college at Ivane Javakhishvili State University in Tbilisi between 1997 and 2001, where he also played soccer. PSR at ¶77. He received a degree in Geology. After college, he attended a coaching program in Riga, Latvia before coming to the United States. PSR at ¶77. Today, he is very active in coaching with youth club soccer teams in Brooklyn. Alex Zaretser, President of Brooklyn Warriors Soccer Association, writes, "His work ethics and the way he dealt with kids were exceptional. He has great skills working under pressure." Nikoloz Kevlishvili, a coach with the New York Red Bulls organization writes that Goletiani "used to help me train kids with lots of love, teach them soccer and he developed their skills." He considers defendant to be an "outstanding human being."

In addition to his athletic pursuits, from the time he arrived in the United States, defendant has mostly remained employed, albeit at different jobs, and has often worked more than one job at a time to support his family. When he first arrived, he worked as a construction laborer and for moving companies in New York. PSR at ¶87. Beginning in 2007, he began to drive limousines for Concord Limousine in Brooklyn, making around $600-800 per week. PSR at ¶86. He sought other employment after developing back pain. In 2010, he began to work for a moving company, where he made about $100 per day. Again, the physical demands of the job proved to be too much for his back. Since 2010, defendant has operated an instructional soccer clinic in Brooklyn. PSR at ¶84. In 2011, Goletiani opened a hot dog restaurant in New York. He lost most if not all of his investment in the business, which he gave up in 2013. PSR at ¶81. Currently, he manages La Gidze, a restaurant in Brooklyn in addition to coaching soccer. PSR at ¶80.

There is no question that the events of the past few years have changed defendant's perspective on nearly everything in his life. He has been forced to confront his own failings and the things he is looking for in life. As described above, he used his time during incarceration to evaluate his conduct, why it happened and the effect it had upon those he cared for most.   The result of this reflection was the reprioritization of his life.  Goletiani left jail with a completely different outlook, as often happens with those who have no criminal history and experience lengthy incarceration. Ms. Shavliashvili describes the changes she has noticed in defendant since his release, "After Lasha was released from prison, he became a completely changed person. He was more caring towards to me,        ) and others around him. He became a better father to his daughter and more involved in family activities than ever before. He has changed for the better and is a completely better person." Goletiani writes in his letter to the Court:

> When I have come out on bail, I have completely changed my lifestyle. I have contemplated on my misdeeds, and I am sincerely remorseful, thus I planned to change myself. I remembered my younger self and became determined to focus

---

2 Letters of support from family and friends are hereto attached collectively as Exhibit B. Because some of the signed letters were cut off, unsigned copies with all text legible are also attached.

once again on becoming a coach for soccer team.

Without a doubt, his decision to involve himself in criminal activity represents an aberration from his otherwise law-abiding life. Goletiani spent six months in federal custody contemplating the mistakes he made and the various steps he can take to correct them. Since that time, he has rededicated himself to his love for his family and coaching soccer. Those that know him see a marked change in personality and demeanor since that time. He has acknowledged the mistakes he made without excuses and is determined to continue to be a nurturing father and contributing member of the community.

## Objections to the PSR Guidelines Calculation

Loss amount

Defendant respectfully submits the following objection to the Guidelines calculation contained in the PSR with respect to the calculation of value of the funds taken in this case. Paragraphs 29 and 45 of the PSR state that the value of the funds is "in excess of $20 million but not greater than $50 million." As a result of that value, the PSR's Guidelines calculation arrives at a base offense level of 28 under Guidelines 2S1.3(a)(2) and 2B1.1(b)(1)(L) and ultimately at an offense level of 32 due to an enhancement that is not in dispute. PSR at ¶2, 45. However, pursuant to paragraph 2 of the Plea Agreement, defendant agreed that the value of the funds in this case was "more than $400,000." Accordingly, in paragraph 6 of the Plea Agreement, defendant consented to the entry of a forfeiture money judgment in the amount of $667,446.08. Plea Agreement at ¶2, 6. The resulting offense level in the agreed upon calculation specified in the Plea Agreement is 21. Defendant respectfully submits that the Guidelines calculation contained in the Plea Agreement is applicable in this case rather than the calculation in the PSR.

Role Reduction

In paragraph 49 of the PSR, Probation states that defendant is not entitled to a reduction of his Offense Level for his role in the offense. However, in paragraph 2 of the plea agreement, the Government expressed its belief that Goletiani was entitled to a 2-level reduction due to his mitigating role in the offense, as a minor participant pursuant to Guidelines § 3B1.1(b). Defendant agrees with the Government's assessment and respectfully objects to the PSR not applying the minor role reduction.

Defendant respectfully submits that a reduction in his offense level for his role in the offense is warranted pursuant to Guidelines § 3B1.2(b). Individuals who are minor participants in criminal conduct can have their offense level reduced by two points. U.S.S.G. § 3B1.2(b). The minor participant adjustment applies to "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.5).

4

A role reduction is warranted where a defendant's conduct is "minor" as compared to the average participant in such a crime. *United States v. Carpenter*, 252 F.3d 230, 235 (2d Cir. 2001). (in order to justify a two level reduction for minor role, defendant must have played a minor role in comparison to the average participant in such a drug crime). The Second Circuit has held that a minor role adjustment is not available merely on a showing that the defendant played a lesser role than his co-conspirators. *United States v. Yu*, 285 F.3d 192, 200 (2d Cir. 2002). Thus, the sentencing court must measure the defendant's culpability against his co-conspirators and against the typical or average defendant of the offense of conviction. See *United States v. Ajmal*, 67 F.3d 12, 18 (2d Cir. 1995); *see also United States v. Lopez*, 937 F.2d 716, 728 (2d Cir. 1991).

Although important, the ultimate determination as to the applicability of a "minor" role adjustment under § 3B1.2 does not turn solely on his status or assigned task within the criminal enterprise. See *United States v. Garcia*, 920 F.2d 453, 155 (2d Cir. 1990). Clarifying its holding in *Garcia*, the Second Circuit, in *United States v. Pena*, 33 F.3d 2, 3 (2d Cir. 1994), stated that the status and assigned tasks of a member in a criminal organization are highly probative of culpability, yet the dispositive consideration remains as "culpability in the context of the facts of the case." Factors such as the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and defendant's awareness of the nature and scope of the criminal enterprise should be considered. See *United States v. Yu*, 285 F.3d at 200; *see also Garcia*, 920 F.2d at 155 (the district court applied the above factors when evaluating whether the defendant drug courier was entitled to role reduction in sentencing). Another important consideration is whether a defendant "played a role that was poorly compensated and limited in importance, duration and skill and authority..." *United States v. Ruiz*, 246 F.Supp. 2d 263, 272 (S.D.N.Y 2002).

The Court is well aware of the facts of the case so they will not be restated in detail herein. However, by all accounts, Goletiani can be described as the courier of the checks and money and the individual that executed the "grunt" work. Goletiani is not, and cannot, be described as an owner of the check cashing business or a person who even possess a financial stake in the conspiracy. Instead, he was paid on per diem basis for work performed. His tasks were performed for the benefit of others and at the instruction of others. Goletiani did not make any business decisions. His role was entirely fungible. If not Goletiani, any other person serving as the conspiracy's courier would have sufficed to deliver checks and cash.

"Global Point"

Defendant respectfully objects to the PSR's failure to provide for a 1 level reduction in his Offense Level by virtue of a global disposition. Paragraphs 2 and 16 of the Plea Agreement in the instant offense provide for a 1-point reduction in the Offense Level if certain conditions are satisfied. By virtue of Goletiani's and his co-defendants' timely pleas of guilty, all such conditions have been satisfied and defendant respectfully requests that the Court apply the "global point" reduction.

5

## Other Sentencing Considerations

<u>Lesser Role</u>

In the event that the Court does not apply a "minor role" reduction pursuant to Guidelines § 3B1.2(b), Goletiani respectfully submits that his clear "lesser role" in the charged conspiracy is a sentencing factor and "circumstance of offense" that weighs in favor of a sentence below the applicable Guidelines range during an 18 U.S.C. § 3553(a) analysis. Furthermore, defendant also respectfully submits that his role in the offense was significantly lesser than that of Craig Panzera and Robert Petrosyants, co-defendants who were sentenced to probation and six months of incarceration respectively.

The strict definition of "minor role" as set forth in Guidelines § 3B1.2(b), and the case law interpreting this section, excludes many individuals that were involved in an offense in only a limited manner from receiving a role reduction. Defendants that do not receive either a downward or upward role adjustment are lumped together in one large group. Under the Guidelines, all the individuals in that group are held equally accountable although their various roles in the conspiracy were different. Some members of this group necessarily would have lesser or greater involvement than others. The individuals with a lesser role, however, are held equally accountable as their more involved co-defendants and co-conspirators. It is an impossible undertaking for the Guidelines to parse out culpability within this large subset of defendants. However, 18 U.S.C. § 3553(a) enables a district court to conduct an analysis of the particular nature and circumstances of the offense conduct.

Defendant's level of involvement in the instant offense was limited in responsibility, control and discretion. In addition to the points made in the "Lesser Role" section, *supra*, the Court should consider that the defendant, as the person who physically brought the checks made out to various shell corporations to Belair Payroll Services and cashed them, played a minor role. He had no involvement in establishing Petrosyant's billing companies and no interactions with Belair's auditors, nor did he sign any checks or hide money in a safe. While defendant fully admits that he knew the money he was handling was the profit of a fraudulent enterprise, he had no involvement in the way in which the money was obtained.

Goletiani respectfully submits that an analysis of his participation in the offense reveals his lesser role in the crime. This lesser role is an important circumstance of the offense for the Court's consideration under 18 U.S.C. 3553(a)(1), the nature and circumstances of the offense.

## CONCLUSION

For the above stated reasons, defendant Lasha Goletiani respectfully submits that his applicable Guidelines range is below that reflected in the PSR and that a sentence well below his applicable range is reasonable and just under the sentencing factors set forth in 18 U.S.C. § 3553.

Thank you for Your Honor's consideration of this letter.

Very truly yours,

/s/
Sanford Talkin

cc:     AUSA Patricia Notopoulos
        Kevin G. Mosley, USDOJ
        J. Randall Warden, USDOJ